UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TAJLEED-STEVEN: HARDY FAMILY OF                                    Plaintiff
HARDY TRUST/ESTATE

v.                                                Civil Action No. 3:23-cv-094-RGJ

NAVY FEDERAL CREDIT UNION and                                     Defendants
UNITED AUTO RECOVERY

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendants Navy Federal Credit Union ("Navy Federal") and United Auto Recovery
("United Auto") (collectively "Defendants") move for summary judgment. [DE 67].
Plaintiff Tajleed-Steven: Hardy's Family Trust/Estate's ("Hardy"), *pro se*, moves for summary
judgment and to strike. [DE 68; DE 69].  Hardy responded to Defendants' motion for summary
judgment [DE 70], and Defendants replied [DE 71].[1]  Defendants also responded to Hardy's
motion for summary judgment [DE 72], and Hardy replied [DE 73].  Briefing is complete, and
the matter is ripe.   For the following reasons, the Defendants' motion for summary
judgment [DE 67] is **GRANTED**, Hardy's motion for summary judgment [DE 68] is **DENIED**
and Hardy's motion to strike [DE 69] is **DENIED**.

## I.      BACKGROUND

On May 9, 2021, Hardy submitted an online application to Navy Federal, and was
approved, for an automobile.  [DE 67-1 at 598].  On May 18, 2021, Hardy drew a check on the
loan for $23,498.06 made payable to Southern Kia.  [DE 67-3 at 621].  Hardy then executed an
ePromissory Note, Security Agreement, and Disclosure ("Contract") with Navy Federal, where

---

[1] Hardy referred to his response to Defendants' motion for summary judgment as "Plaintiff's objection to
Defendants' motion for summary judgment." [DE 70].

Hardy agreed to re-pay Navy Federal $27,107,18 in 71-month installments of $76.49, starting July 13, 2021. [DE 67-4 at 623]. The Contract secured the loan with a 2020 Kia Sportage. [*Id.*]. Hardy states that he signed the Contract and understood its terms. [DE 67-7 at 647-48].

On May 14, 2021, Hardy started making payments on the loan (Account No. 9959). [DE 67-5 at 626]. He continued to make regular payments, totaling $4,630.05, until August 3, 2022. [*Id.*]. He has not made any payment on the account since August 3, 2022. [*Id.*]  Instead, Hardy "mailed a statement coupon he received back to Navy Federal" where he handwrote "Pay to the Order: Navy Federal Credit Union, Three hundred and seventy-six dollars 49/100 cents, UCC 3-603, UCC 1-103." [DE 67-9 at 687]. Hardy argues that this coupon satisfied the account in full. [DE 67-7 at 651].

Hardy again mailed a second coupon. [DE 67-10 at 689]. This time he handwrote on the coupon "Pay to the Order: Navy Federal Credit Union, seven hundred and fifty-two dollars 98/100 cents, UCC 3-603, UCC 1-103." [*Id.*]. Hardy contends that these coupons were converted into checks when he wrote "Pay to the Order of Navy Federal." [DE 67-7 at 650].

On August 1, 2022, Navy Federal received a letter from Hardy stating "Notice of Conditional Acceptance." [DE 67-6 at 631]. In this letter, Hardy "claimed that Navy Federal's refusal to accept [his] 'negotiable instruments' was an offer to reject payments on the Account." [*Id.*]. Navy Federal responded on August 7, 2022, where it "advised [Hardy] that it was in receipt of the documentation he forwarded regarding his Navy Federal account(s), and that the documents were not valid and did not release him from his obligation to Navy Federal." [DE 67-7].

Hardy's account was charged off on January 27, 2023, because of non-payment, and Navy Federal hired United Auto to repossess the Kia Sportage. [DE 67-5 at 627]. In 2023, United Auto

repossessed the Kia, from the Brookview Apartments parking lot in Louisville, Kentucky. [DE 67-7 at 655].

In his Complaint, Hardy asserts three claims against Defendants: (1) violation of the TILA, (2) Bank Fraud, and (3) "Grand Theft Auto." [DE 1-2]. These three claims stem from Hardy's belief that Navy Federal was required to accept "coupon bonds," in lieu of valid currency, in full satisfaction of Hardy's Navy Federal Auto Loan, and therefore, Defendants wrongfully repossessed his car. [DE 1-1].

## II.   DISCUSSION

Because the outcome of the Motion to Strike [DE 69] has a bearing on the facts considered when reviewing the Motion for Summary Judgement [DE 67] the Court addresses the Motion to Strike [DE 69] first.

### A.   Hardy's Motion to Strike [DE 69]

Hardy moves to strike Jeffrey Gambino's declaration from the record. [DE 69]. Hardy argues:

> The declaration would be redundant as it repeats the already established facts in the case. Its impertinent as the declarant fails to prove they had firsthand knowledge and experience regarding the alleged loan ending in 9959. The declaration is also immaterial as it does not add in new factual facts to the case.

*Id*. Defendants only acknowledge that Hardy filed a motion to strike. [DE 71].

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike pleadings. It provides that upon a motion made by a party, "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may strike portions of the pleading on its own initiative or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days

after being served with the pleading." Fed. R. Civ. P. 12(f)(1)– (2).  "Motions to strike under Rule 12(f) are addressed within the sound discretion of the Court, although they are generally disfavored."  *Hashemian v. Louisville Reg'l Airport Auth.*, No. 3:09-CV-951-R, 2013 WL 1788473, at *5 (W.D. Ky. Apr. 26, 2013) (citing *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (internal citations omitted)).  "Striking a pleading is a drastic remedy to be resorted to only when required for purposes of justice."  *Id.* (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F. 2d 819, 822 (6th Cir. 1953)). "A motion to strike should be granted only where there is a clear showing that the challenged defense has no bearing on the subject matter and that permitting the matter to stand would prejudice the party."  *Id.* (citing *Ameriwood*, 961 F. Supp. at 1083).

Rule 7(a) defines "pleadings" as:

> [A] complaint and an answer; a reply to a counterclaim denominated as such; an answer to a crossclaim, if the answer contains a crossclaim; a third-party complaint, if a person who was not an original third party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served.

Fed. R. Civ. P. 7(a). As Gambino's affidavit attached to Defendants' motion for summary judgment is not a pleading as defined by Rule 7(a), it is not a proper motion to strike under Rule 12(f).  *See Dowell v. Bernhardt*, No. 3:19-CV-00105, 2019 U.S. Dist. LEXIS 218303, 2019 WL 6909461, at *5 (M.D. Tenn. Dec. 19, 2019).  Thus, Hardy's Motion to Strike [DE 69] is **DENIED**.

## B.  Defendants' Motion for Summary Judgment [DE 67]

Defendants filed a motion for Summary Judgment, arguing "[t]here can be no genuine dispute that [Hardy] failed to make payments to Navy Federal as specified in the Contract" and that "[Hardy] has failed to develop any evidence that Navy Federal or United Auto violated any law."  [DE 67-1 at 598, 614].  Hardy responded to Defendants' motion, stating that his response

4

"is to provide the Court with full clarity in regard to the violations/charges against Navy Federal Credit Union." [DE 70 at 748]. However, Hardy neither addressed Defendant's legal arguments in his response, nor did he argue that there is a genuine issue as to any material fact. [*See* DE 70].

As a threshold matter, because Hardy failed to address Defendants motion for summary judgment arguments, the Court could dismiss Hardy's claims as abandoned. *See, e.g., Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011)) ( "[The Sixth Circuit's] jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."); *see also, e.g., United States v. Brown*, 7 F. App''x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion"); *Scott v. State of Tenn*., 878 F.2d 382, at *2 (6th Cir. July 3, 1989) (unpublished table decision) (when a plaintiff fails to respond, or oppose, a defendant's motion, then the district court "may deem the plaintiff to have waived opposing to the motion") (citations omitted).

However, the district court cannot grant the Defendants' motion without first considering evidence supporting the Defendants' position and determining whether they have met their burden. *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013) (citing *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x. 374, 380-81 (6th Cir. 2011) ("a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden.")). The court, will not, however, sua sponte comb the record from the partisan perspective of an advocate for the non-moving party. *F.T.C. v. E.M.A.*

*Nationwide, Inc.,* 767 F.3d 611, 630 (6th Cir. 2014). "Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Id.* Thus, the Court will still address the merits of Defendants' motion.

i.   *Legal Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party shows that there is no genuine issue of material fact about an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of proving that no genuine issue of material fact exists. *Id.* at 1435. A fact is "material" if proof of that fact could establish or refute an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, when

a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*

Once the moving party carries the initial burden of proving that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Id.* at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249– 50 (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

"*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 519 (1972). Yet "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent*

*Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

ii.     *Violation of the Truth-in-Lending Act*

Hardy alleges that Navy Federal violated TILA. [DE 1-2]. Hardy contends that (1) Navy Federal violated "12 U.S.C. 1666(b)(4) [sic]" since it failed to reflect properly on the statement that Hardy owed a balance; and (2) "Navy Federal violated the [TILA] Regulation Z by not providing the consumer with full disclosure as in regards to [sic] their usage of securities, escrow account, and that the vehicle is not collateral." [DE 1-2 at 15; DE 67-8 at 683].

Generally, the TILA requires creditors to respond to consumer inquiries regarding billing errors. 15 U.S.C. §1666(a). When the creditor receives receipt of a timely billing error notice from the consumer, the creditor must send the consumer written acknowledgement that the notice was received within 30 days. *Id*. The creditor is also required to investigate the disputed matter. *Id*. On investigation, the creditor must either make timely corrections or send the consumer a written explanation of why the statement was correct before attempting to collect the disputed amount. *American Express Co. v. Koerner*, 452 U.S. 233, 235-7 (1981). Under 15 U.S.C. § 1666(b)(4), a "billing error" includes "[t]he creditor's failure to reflect properly on a statement a payment made by the obligor, or a credit issued to the obligor."

Regulation Z provides "that the requisite written notice from the consumer must, to the extent possible, indicate the consumers belief and the reasons for the belief that a billing error

exists, and the type, date, and amount of the error." *Burnstein v. Saks Fifth Ave. & Co.*, 208 F.

Supp. 2d 765, 774 (E.D. Mich. 2002) (quoting 15 U.S.C. § 1666(b)(2)).

Hardy alleges:

> On June 26, 2022, [he] sent a negotiable instrument to Navy Federal
> Credit Union to satisfy the account in full. Navy Federal Credit
> Union failed to properly credit the alleged loan account ending in
> 9959 and did not return the negotiable instrument for the second
> time. [He] had sent a letter of Conditional Acceptance to CEO Mary
> McDuffie, CFO John Collins, and COO Dietrich Kuhlmann
> informing them that they have refused to accept my negotiable
> instrument and [he] is requesting written documentation of why,
> requested the full accounting to prove that Navy Federal Credit
> Union is the originator of the loan, and informed Navy Federal
> Credit Union of the laws that state otherwise.

[DE 1-2 at 13]. But the only billing error that Hardy asserts is that "all of the balance is positive"

and that he cannot owe something if the balance is positive. [DE 67-7 at 648-49]. And Hardy

never claims that he sent a "notice of billing error" to Navy Federal, only that he sent a "notice of

conditional acceptance." [DE 67-6].

Even viewing Hardy's letters and the remainder of the record in a light most favorable to

Hardy, the letter cannot be read as providing notice of a "billing error." [*See* DE 67-6]. For one,

the "notice of conditional acceptance" does not mention a "billing error" or "error." [*See id.*].

More, the "notice of conditional acceptance" does not meet the requirements set forth by 15 U.S.C.

§ 1666(b)(2). And even if the "notice of conditional acceptance" was an acceptable notice of

"billing error" under the TILA, Navy Federal still responded to Hardy explaining why the Coupons

were not acceptable forms of payment; thus, meeting the requirements as set forth by 15 U.S.C. §

1666(b)(2). [DE 67-7]. Therefore, Defendants motion for summary judgment on its first claim is

**GRANTED**.

### iii.    *Bank Fraud*

Second, Hardy claims that Navy Federal committed Bank fraud "by not recording [Hardy's] negotiable instrument. [DE 1-2 at 15]. Defendants argue that (1) Hardy does not have standing to bring actions for bank fraud; and (2) there is no evidence to support Hardy's claim of bank fraud. [DE 67-1 at 608-10].

However, Hardy's argument fails because private citizens do not have standing to enforce criminal statutes. Hardy does not have standing to allege Bank Fraud because private citizens cannot enforce criminal statutes and do not have a "judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1972); *see also Ohlendorf v. United Food & Com. Workers Int'l Union, Loc. 876*, 883 F.3d 636, 642 (6th Cir. 2018) (noting that this court generally does not imply a private right of action in favor of crime victims); *Durr v. Wayne Cty.*, No. 24-1253, 2024 U.S. App. LEXIS 15408, at *3 (6th Cir. June 25, 2024) (finding that a private citizen cannot sue based on an alleged violation of a federal criminal statute). Likewise, Hardy also does not have standing to assert RICO liability because only defrauding financial institutions have standing to assert bank fraud as a RICO predicate, and Hardy is not a financial institution. *Tunne v. Hendrick*, No. 5:10CV-00181-JHM, 2012 U.S. Dist. LEXIS 120483, at *39 (W.D. Ky. Aug. 24, 2012) (citing *Herrick v. Liberty League Int'l*, No. 1:07-cv-936, 2008 U.S. Dist. LEXIS 42527, at *11 (S.D. Ohio May 28, 2008)).

Thus, even viewing the facts and drawing all reasonable inferences in a light most favorable to Hardy, there is no genuine issue as to any material fact and the Defendants are entitled to a judgment as a matter of law. Because Hardy is a private citizen, Defendants' motion for summary judgment on its second claim is **GRANTED**.

iv.     *Grand Theft Auto*

Hardy also asserts that Defendants committed "Grand Theft Auto;" however, Hardy's arguments are hard to follow.  [DE 1-1 at 11].  Hardy testified that Defendants committed "Grand Theft Auto" because Navy Federal did not have a right to repossess the Kia Sportage since the coupons satisfied the account in fully.  [DE 67-7 at 651].

District courts have no obligation to act as counsel or paralegal to pro se litigants and are not required to create a pro se litigant's claims for him.  *Pliler v. Ford*, 542 U.S. 225, 231, 124 S. Ct. 2441, 159 L. Ed. 2d 338 (2004).  *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003) (Courts are not "required to create a pro se litigants claims for him.") ; *see also Chenault v. Univ. of Ky.*, 607 B.R. 300, 316 (E.D. Ky. 2019).  Thus, when a pro se litigant's claims are unclear and difficult to distinguish, the court is not required make and clarify his claims for him.

In his complaint and subsequent briefing, Hardy provides little, if any, clarity regarding the legal premise for Grand Theft Auto.  [*See* DE 1-2; DE 70].  And although Hardy believes "Grand Theft Auto" was committed when "Navy Federal Credit Union stole a vehicle that did not belong to them being that the Plaintiff was in 9/10ths possession. Per their promissory note, [t]he Plaintiff is the owner of the vehicle," this factual allegation does not amount to a legal claim upon which relief can be granted.  [DE 67-8 at 684].

Hardy's claim cannot amount to a legal criminal claim because "Grand Theft Auto" is not a valid charge under Kentucky law, but rather a term used to describe felony theft, there is no private right of action.  *See* K.R.S. § 514.030.  And even if the Court were to interpret Hardy's Grand Theft Auto claim as claim of tort conversion, Hardy's claim would still fail because under Kentucky law, conversion requires that "the plaintiff had possession of the property or the right to

11

possess it at the time of the conversion . . ." *Ky. Ass'n Ctys. All Lines Fund Trust v. McLendon*, 147 S.W.3d 626, 632 n.12 (Ky. 2005) (citations omitted).

Here, Hardy asserts that Navy Federal did not have the right to repossess the Kia Sportage because his coupons satisfied the account in full. [DE 67-7 at 651]. Rather, Hardy did not have the right to possess the Kia Sportage because when he signed the contract, he agreed to a default provision. [DE 67-1 at 614; DE 67-4 at 624]. And because Hardy failed to make payments to Navy Federal, because his coupons constituted "failure to make payments as specified," United Auto was permitted to repossess the Kia Sportage on Navy Federal's behalf. [DE 67-4 at 624]. Therefore, even viewing the facts and drawing all reasonable inferences in a light most favorable to Hardy, there is no genuine issue as to any material fact.

Thus, because Hardy failed to fully develop his claim at this stage of the proceeding, and because Hardy did not have a right to possess the Kia Sportage at the time of conversion, Defendants' motion for summary judgment on its third claim is **GRANTED**.

### C.  Hardy's Motion for Summary Judgment [DE 68]

Hardy also filed a motion for summary judgment [DE 68]. Hardy is requesting "a summary [judgment] be granted to Plaintiff to recifty [sic] the damages, injuries, and harm that has been caused by the Defendants intentionally." In response, Defendants argue the Court should deny Hardy's motion because (1) Hard attempts to pursue entirely new theories of liability, and (2) no reasonable juror could find in Hardy's favor. [DE 72 at 810-11].

The Court's standard of review does not change when the parties file cross-motions for summary judgment. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."). When reviewing cross-motions for

summary judgment, a court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

In his motion, Hardy argues new claims, alleging that: (1) the Defendants "failed to provide the debt validation proof pursuant to 15 USC § 1692G(b) [sic]"; (2) the Defendants "failed to provide the Plaintiff with full disclosure of [sic] security agreement and epromissory note and their actions to securitize the loan on the secondary market for financial gain;" (3) Navy Federal "no longer is the holder in due course or has any claims to the security agreement or the epromissory note to enforce payment, repo a vehicle, or harass or extort the Plaintiff for any alleged debt;"[2] and (4) that the Defendants "proceeded with their extortionate, harassing, and deceitful tactics to coerce the Plaintiff for payments that were not truly owed to the Defendant initially." [DE 68 at 692-94].

However, when "the plaintiff raises the new claims for the first time in a summary-judgment briefing, it generally subjects a defendant to unfair surprise, because the defendant has no opportunity to investigate the claim during discovery." *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019) (quoting *M.D. ex rel. Deweese v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 778 (6th Cir. 2017)) (internal quotations omitted). "Parties who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under

---

[2] Even if Hardy's securitization claim was not newly brought at this stage, other courts in this circuit have found that securitization itself does not render a note unenforceable, nor does it deprive the creditor of "any claims to the security agreement or the epromissory note to enforce payment." [DE 68 at 693]; *see e.g.*, *Dauenhauer v. Bank of N.Y. Mellon*, 562 F. App'x 473, 475 (6th Cir. 2014) ("securitization alone does not render a note or deed of trust unenforceable and does not alter a borrower's obligation to pay back his loan."); *Cox v. Bank of Am., N.A.*, No. 1:23-CV-1976, 2024 U.S. Dist. LEXIS 109436, at *7 (N.D. Ohio June 21, 2024) ("securitization does not, as a matter of law, render a loan unenforceable, nor does it eliminate a borrower's obligation to pay back the loan"); *Carter v. Freedom Mortg. Corp.*, No. 3:22-cv-00739, 2024 U.S. Dist. LEXIS 46189, at *16 (M.D. Tenn. Feb. 13, 2024).

Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing." *Id.* (citations omitted). However, the deadline for Hardy to file a motion to amend was "no later than July 14, 2023," which was over a year ago. [DE 18].

Fed. R. of Civ. P. 6(b) permits the court to accept a filing after the relevant deadline, "where the failure to file was the result of excusable neglect." Fed. R. Civ. P. 6(b). In determining whether such neglect was excusable, the Court balances five factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith *See Nafzinger v. McDermott Int'l, Inc.,* 467 F.3d 514, 522 (6th Cir. 2006).

Yet, even if Hardy moved to amend his pleadings, he would not be able to show excusable neglect. First, amending Hardy's complaint this late in the proceeding would be prejudicial to Defendants because it would cause a significant delay in the judicial proceedings since all discovery was completed by January 12, 2024, and the Defendants have filed summary judgment motions. Second, Hardy is not able to provide a reason for the delay because he had all the relevant evidence to introduce new claims since the close of discovery. Third, because Hardy had all the relevant evidence since January 12, 2024, the delay was within his reasonable control. Thus, even if Hardy moved to amend his complaint at this stage in the proceeding, he cannot show excusable neglect.

Therefore, the Court will not consider Hardy's new claims, and Hardy's Motion for Summary Judgment [DE 68] is **DENIED**.

### III.    CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, **IT IS**

**ORDERED** as follows:

    (1) Hardy's Motion to Strike [DE 69] is **DENIED**.

    (2) Defendants Motion for Summary Judgment [DE 67] is **GRANTED**.

    (3) Hardy's Motion for Summary Judgment [DE 68] is **DENIED**.

    (4) Accordingly, the Court will enter a separate judgment.

October 9, 2024

Rebecca Grady Jennings, District Judge
United States District Court

15